UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ASHLEY TELLIS | Case No. 1:25-mj-606 |

### AFFIDAVIT

I, Jeffrey Scott, being duly sworn, declare and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since April 2010. I am currently assigned to the FBI Washington Field Office. Prior to becoming a Special Agent, I was an Intelligence Analyst with the FBI from June 2004 until I began my training as a Special Agent in December 2009. During my employment with the FBI, I have conducted and/or assisted in many investigations ranging from white-collar criminal investigations to national security investigations. I have conducted and/or participated/assisted in surveillance, interviews of witnesses and subjects, applications for and the execution of physical and electronic searches, and arrests. In my current position, I am responsible for conducting and assisting in investigations into the activities of individuals whose conduct may constitute a threat to national security and/or a violation of federal law. As a result of my training, education, and experience, I am familiar with the manner in which criminal activity is carried out, and the efforts of persons involved in such activity to avoid detection by law enforcement. As a Special Agent of the FBI, I am authorized to investigate violation of laws of the United States, and execute warrants issued under the authority of the United States.

2. I make this affidavit in support of a criminal complaint charging Ashley TELLIS with the unlawful retention of national defense information, in violation of 18 U.S.C. § 793(e).

3.      Unless otherwise noted, the conclusions and beliefs expressed in this affidavit are based on my training, experience, and knowledge of the investigation, and reasonable inferences I have drawn from my training, experience, and knowledge of the investigation. The facts contained in this affidavit come from my review of the evidence, my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I have hearsay knowledge. This affidavit is intended only to demonstrate that probable cause exists in support of the requested criminal complaint, and does not include all information known to me or to other law enforcement officers regarding this investigation.

## STATUTORY AUTHORITY AND DEFINITIONS

4.      Under 18 U.S.C. § 793(e), "[w]hoever having unauthorized possession of, access to, or control over any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it [commits a federal offense.]"

5.      Under Executive Order 13526, the unauthorized disclosure of material classified at the "TOP SECRET" level ("TS"), by definition, "reasonably could be expected to cause

exceptionally grave damage to the national security" of the United States. Exec Order 13526 § 1.2(a)(1), 75 Fed Reg. 707, 707-08 (Jan. 5, 2010). The unauthorized disclosure of information classified at the "SECRET" level ("S"), by definition, "reasonably could be expected to cause serious damage to the national security" of the United States. Exec. Order 13526 § 1.2(a)(2). The unauthorized disclosure of information classified at the "CONFIDENTIAL" level ("C"), by definition, "reasonably could be expected to cause damage to the national security" of the United States. Exec. Order 13526 1.2(a)(3).

6. Sensitive Compartmented Information ("SCI") is classified information related to intelligence sources, methods, and analytical processes. SCI is to be processed, stored, used, or discussed in an accredited Secured Compartmented information Facility ("SCIF"), and only individuals with the appropriate security clearance and additional SCI permissions are authorized to access such classified national security information. For a foreign government to receive access to classified information, the originating United States agency must determine that such release is appropriate.

7. Pursuant to Executive Order 13526, information classified at any level shall be lawfully accessed only by persons determined by an appropriate United States government official to be eligible for access to classified information, who has signed an approved non-disclosure agreement, who has received a security clearance, and who has a "need to know" the classified information. Classified information shall only be stored or discussed in an approved facility.

## **PROBABLE CAUSE**

### **TELLIS's U.S. Government Employment and Access to Classified Information**

8. Ashley TELLIS is a naturalized U.S. citizen who, as of October 11, 2025, resided at a home in Vienna, Virginia. Since 2001, TELLIS has been employed with the Department of

State (DOS). He is currently an unpaid Senior Advisor at DOS. Additionally, TELLIS is a contractor in the Office of Net Assessment (ONA) within the Department of Defense (DOD). In his role with ONA, TELLIS is considered a subject matter expert on India and South Asian affairs. Additionally, TELLIS is currently employed as a Senior Fellow at the Carnegie Endowment for International Peace.

9. Due to his employment with DOS and DOD, TELLIS possesses a Top Secret security clearance with access to Sensitive Compartmented Information (SCI).

10. On August 2, 2001, TELLIS signed a Classified Information Nondisclosure Agreement with the U.S. government, agreeing to comply with laws and regulations that prohibit the unauthorized disclosure of classified information and acknowledging that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation.

**TELLIS Removed Classified Materials from the SCIF**

11. On September 12, 2025, TELLIS was observed via video surveillance inside the Mark Center, a DOD facility located at 4800 Mark Center Drive, Alexandria, Virginia in the Eastern District of Virginia. TELLIS was observed via video surveillance entering a SCIF utilized by ONA. Computer records indicated TELLIS used a computer at an identified cubicle. TELLIS had a co-worker print multiple classified documents for him that day.

12. Later that evening, after TELLIS departed, investigators located two Redweld file pockets, both labeled "TELLIS," in the cubicle TELLIS had used. The documents contained in the Redweld file pockets included the documents printed by the co-worker for TELLIS earlier that day, including a document classified at the TOP SECRET level.

13. On September 25, 2025, TELLIS entered the DOS Harry S. Truman Building (HST) at approximately 3:00 p.m. TELLIS entered the office of the Bureau of South and Central

Asian Affairs suite 5247 and logged onto "Classnet," DOS's SECRET-level computer system. TELLIS stayed for approximately one hour and then departed DOS.

    14.    Later that same day, TELLIS returned to the HST at approximately 8:11 p.m. He entered through the C Street entrance carrying a leather briefcase/bag. At approximately 8:13 p.m., TELLIS badged into office suite 5247. At approximately 8:17 p.m., he logged on to Classnet. At approximately 8:19 p.m., TELLIS opened a PDF file from the desktop with a filename that referenced adversary fighter aircraft and the year 2024. The file opened as a document with a title that referred to U.S. Air Force tactics techniques and procedures. The document had a Department of the Air Force Seal at the top and banner markings at the top and bottom that read SECRET//FGI//RSEN/NOFORN//FISA.[1] The document was 1,288 pages in length. TELLIS then opened the print window but canceled out without printing. TELLIS re-saved the document, changing the file name to "Econ Reform". TELLIS reopened the print window and entered "59-172" in the "pages" window. He selected "multiple" for page sizing and handling. This format showed in the print preview window to arrange two pages from the document on each page being printed. TELLIS scrolled through most of the pages of the print preview. TELLIS clicked on the printer selection drop-down menu and selected a printer located at HST. At approximately 8:26 p.m., TELLIS pressed the print button but the document did not print. TELLIS attempted to print the document several times, however, it did not appear that the document printed at that time. At approximately 8:33 p.m., TELLIS opened an unclassified document concerning a public speech by a U.S. government official. TELLIS printed that document. At approximately 8:34 p.m., he

---

[1] "FGI" is an abbreviation for Foreign Government Information, which refers to information provided to the U.S. Intelligence Community by a foreign government. "RSEN" is an abbreviation for Risk Sensitive Notice, which is used to denote sensitive imagery products. "NOFORN" denotes information that may not be disseminated to individuals other than U.S. persons. "FISA" refers to classified information obtained via the Foreign Intelligence Surveillance Act.

reopened the document now titled "Econ Reform" and printed pages 59-172. TELLIS then printed pages 173-285 and 286-398. At approximately 8:49 p.m., TELLIS printed pages 943-959. At approximately 8:51 p.m., TELLIS deleted the file titled "Econ Reform".

15.     At approximately 8:52 p.m., TELLIS opened a PDF document classified SECRET//NOFORN. The file opened as a U.S. Air Force Weapons School document concerning military aircraft capabilities. He briefly scrolled through the document and then printed all 40 pages of the document. At approximately 8:53 p.m., TELLIS opened a PDF document classified SECRET//NOFORN. The file opened as another U.S. Air Force Weapons School document concerning military aircraft. TELLIS printed all 40 pages of the document.

16.     At approximately 9:11 p.m., TELLIS logged off Classnet. At approximately 9:17 p.m., TELLIS badged out of HST through the C Street exit carrying a leather briefcase/bag.

17.     On October 10, 2025, TELLIS was observed again inside the Mark Center inside a SCIF suite utilized by ONA and sitting at the same cubicle. TELLIS was observed on video surveillance arriving at the cubicle carrying a leather briefcase/bag at approximately 10:13 a.m. At approximately 10:14 a.m., TELLIS removed multiple pages (DOCUMENTS A) from a Redweld file pocket located on his desk and placed DOCUMENTS A on his desk. The first page of DOCUMENTS A appeared to be PowerPoint presentation in a landscape format. TELLIS was then observed opening his leather briefcase/bag for the first time since arriving at his cubicle and removing notepads and placing them on top of the Redweld file pocket. TELLIS then appeared to remove additional documents (DOCUMENTS B) from the notepads TELLIS brought with him and placed DOCUMENTS B on his desk next to DOCUMENTS A. The first page of DOCUMENTS B also appeared to be a PowerPoint presentation, and appeared similar to the first page of DOCUMENTS A.

18. While sitting at his cubicle, beginning at approximately 10:18 a.m., TELLIS appeared to read one of the pages from DOCUMENTS A, which TELLIS previously removed from the Redweld file pocket. The affiant believes this page is classified at the TOP SECRET level as it appears to be a document that was previously printed and left at the same cubicle utilized by TELLIS when TELLIS last came into the ONA SCIF on September 12, 2025.

19. At approximately 12:20 p.m., TELLIS was observed on video surveillance sitting at the cubicle and placing DOCUMENTS A in and amongst his notepads. More specifically, TELLIS lifted some of the pages of one of the notepads and inserted DOCUMENTS A between the notepad pages and then straightened DOCUMENTS A so they aligned with the pages of the notepad and re-inserted DOCUMENTS A into the notepad. TELLIS then glanced over his shoulder toward the exit of the cubicle and he then placed the notepads containing DOCUMENTS A, including the document classified at the TOP SECRET level, into his leather briefcase/bag. TELLIS was then observed leaving the cubicle at approximately 12:21 p.m. for the day.

20. TELLIS subsequently left the Mark Center with his leather briefcase/bag. TELLIS departed the Mark Center in his vehicle and drove directly to his home in Vienna, Virginia. Virginia DMV records show that this vehicle is registered to TELLIS and his spouse.

### TELLIS's Contacts with Foreign Government Officials

21. TELLIS has met with government officials of the People's Republic of China (PRC) on multiple occasions over the past several years.

22. On September 15, 2022, multiple PRC government officials and TELLIS had dinner at a restaurant in Fairfax, Virginia. TELLIS entered the restaurant with a manila envelope and the PRC officials entered the restaurant with a gift bag. TELLIS and the PRC officials sat in a back corner of the restaurant with the manila envelope on the table. The dinner meeting lasted

approximately two hours and TELLIS did not appear to have the manila envelope in his possession upon his departure from the restaurant.

23. On April 11, 2023, TELLIS again had dinner with PRC government officials at a restaurant in Fairfax, Virginia. During the meal, TELLIS and the PRC officials could be occasionally overheard talking about Iranian-Chinese relations and emerging technologies, including artificial intelligence.

24. On March 19, 2024, TELLIS dined again with PRC officials at a restaurant in Fairfax, Virginia. After finishing their meal, the group continued conversing and were heard speaking about U.S.-Pakistan relations.

25. On September 2, 2025, TELLIS had another dinner with PRC officials in Fairfax, Virginia. Near the end of the dinner, the PRC officials gave TELLIS a red gift bag.

**A Search of TELLIS's Residence Revealed Documents Marked as Classified**

26. On October 11, 2025, a federal court issued a search warrant authorizing the search of TELLIS's house in Vienna, Virginia, as well as TELLIS's vehicle and person. The searches were conducted the same day.

27. While searching TELLIS's house in Vienna, investigators located over a thousand pages of paper documents with classification markings at the TOP SECRET and/or SECRET levels at various locations within the house. The documents were generally found in four locations: (1) a four-drawer locked filing cabinet in a closet in the basement home office area; (2) a two-drawer locked filing cabinet in the basement home office area; (3) in the vicinity of a desk in the basement home office area; and (4) in three large black trash bags in an unfinished storage room in the basement.

28. Based on information developed during the execution of the search warrants, I believe that the basement home office area is primarily utilized by TELLIS. A laptop on the desk in the home office area was unlocked during the search with TELLIS's fingerprint. TELLIS directed investigators to keys that investigators used to open the two locked filing cabinets. The keys were stored in a closet near the filing cabinets.

29. On the desk in the basement home office area, investigators located a document with SECRET portion markings.

### TELLIS's Planned Overseas Travel

30. TELLIS had scheduled international travel for the evening of on or about October 11, 2025—the date of the search of TELLIS's residence. TELLIS and his family had been scheduled to travel to Rome, Italy. TELLIS was scheduled to participate in a work engagement in Italy as part of the trip. According to the flight reservation, TELLIS would have returned to the United States via Milan, Italy on or about October 27, 2025.

## CONCLUSION

31.     I submit that this affidavit establishes probable cause in support of a criminal complaint charging Ashley TELLIS with the unlawful retention of national defense information, in violation of 18 U.S.C. § 793(e), and thus respectfully request that the Court issue a complaint charging TELLIS with that offense.

Respectfully submitted,

*Jeffrey Scott*
_____
Jeffrey Scott
Special Agent
Federal Bureau of Investigation

Affidavit submitted by e-mail and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 this 13th day of October, 2025.

Digitally signed by Ivan Davis
Date: 2025.10.13 18:15:58 -04'00'
_____
HON. IVAN D. DAVIS
UNITED STATES MAGISTRATE JUDGE