# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> vs. <br><br> ASHLEY J. TELLIS, <br><br> *Defendant*. | Case No. 1:25-mj-00606-LRV |

## **DEFENDANT'S MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

COMES NOW Ashley J. Tellis, by counsel, and states as follows:

### INTRODUCTION

In this country, "liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Consistent with this bedrock principle, the Bail Reform Act permits pretrial detention only when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any person and the community." 18 U.S.C. § 3142(e), (f). To obtain a detention order, the government must demonstrate either (1) by "clear and convincing evidence" that "no conditions other than detention will reasonably assure the safety of any other person and the community," *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005); or (2) by a preponderance of the evidence that detention is necessary to assure the defendant's appearance at future court proceedings, *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001).

With the government now agreeing to conditions of release, we respectfully submit the following information for the record in further support of release on bond.

Far from being a danger or flight risk, Ashley Tellis is a 64-year-old U.S. citizen and Ph.D. with deep family, professional, and community ties. He is presumed innocent of the charge of unlawful retention of national defense information. Any insinuation that Dr. Tellis has disclosed classified information—let alone to a foreign government—lacks any evidentiary basis. Regrettably, investigators appeared to interpret his routine professional duties, such as liaison work and international travel, as clandestine activity, reading something sinister into what were standard think-tank and scholarly foreign policy engagements. Finally, Dr. Tellis' medical condition further underscores that he poses no risk of flight.

## PRINCIPLES GOVERNING PRETRIAL DETENTION

Under the Bail Reform Act, a defendant shall be detained only if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The Court's decision is guided by the factors set forth in 18 U.S.C. § 3142(g). These factors are (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," including, among other factors, family ties, employment, financial resources, past conduct, and criminal history; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.*; *see also United States v. Vane*, 117 F.4th 244, 250 (4th Cir. 2024).

## FACTUAL PROFFER IN SUPPORT OF PRETRIAL RELEASE

I. **Family and Community Ties.**

Dr. Tellis' life is rooted in the Northern Virginia and greater D.C. community, and his family forms the core of his personal life. He has been with his wife, Dhun Tellis, for nearly 46 years. Together they have built a stable and loving household that serves as a foundation not only

for themselves but for their three adult children, all of whom reside locally. His 18-month-old granddaughter lives nearby, and a second grandchild is expected in May 2026. Dr. Tellis has been an involved and supportive father and grandfather throughout their lives, and his family depends on his presence. To remove him from this family environment would not only disrupt his household but significantly impact those who rely on him.

Beyond his immediate family, Dr. Tellis is an active member of his church parish, where he and his family have attended Mass for over 25 years, sitting in the same pew every Sunday. His presence is valued by his church community. His local pastor, Father William Metzger, has submitted a letter in support of Dr. Tellis, attached as Ex. A, confirming Dr. Tellis' longstanding commitment to his faith and the values it upholds—compassion, humility, and service. The loss of his presence would be felt personally and communally.

Dr. Tellis also maintains broad social and professional networks in Northern Virginia and Washington, D.C. His professional relationships extend to former and current U.S. government officials who frequently rely on his expertise. These relationships are evidence of deep and enduring ties to the community—professional, social, and civic—that weigh strongly against any risk of flight.

**II.     Esteemed Career in Public Policy and U.S. Government Service.**

Dr. Tellis is a leading scholar in international security, defense strategy, and U.S. foreign policy, with decades of service in both government and think-tank capacities. After arriving in the United States in 1985, Dr. Tellis earned both his master's and doctoral degrees in political science from the University of Chicago. In 1993, he both became a U.S. citizen and began his career at the RAND Corporation, serving as a Senior Policy Analyst and Professor of Policy Studies.

In 2001, under President George W. Bush, Dr. Tellis was appointed Senior Advisor to the U.S. Ambassador to India in New Delhi. He later served as Special Assistant to the President and Senior Director for Strategic Planning and Southwest Asia on the National Security Council. During his tenure, Dr. Tellis played a pivotal role in shaping the U.S.-India civil nuclear agreement—widely regarded as one of the Bush Administration's most significant foreign policy achievements.

In 2003, Dr. Tellis joined the Carnegie Endowment for International Peace, a leading nonprofit organization dedicated to international affairs. Over more than two decades, Dr. Tellis has built enduring professional and personal relationships with his colleagues and remains deeply committed to the institution's mission.

Since the Bush Administration, he has served as a Special Government Employee for the Department of State, providing strategic counsel as a Foreign Affairs Officer. He also supported the Department of Defense (now War)—through the Office of Net Assessment, producing specialized research and reports on issues within his field of expertise. His sustained dedication to public service reflects both his intellectual depth and his commitment to national interests. At his core, Dr. Tellis is driven by a lifelong passion for learning and academic scholarship. His prolific body of work includes the publication of more than 20 books and numerous articles. *See* Curriculum Vitae of Ashley J. Tellis, attached as Ex. B. He is frequently invited to testify before Congress and has lectured at leading universities around the world, including Columbia, Stanford, Princeton, Brown, UCLA, Johns Hopkins, Oxford, the London School of Economics, Peking University, Tsinghua University, the University of Sydney, and the NATO Defense College. He is widely admired by students and peers alike.

During the COVID-19 shutdown, Dr. Tellis continued his scholarly work. In 2022, he published *Striking Asymmetries: Nuclear Transitions in Southern Asia*,[1] a work examining the evolving nuclear dynamics among China, India, and Pakistan. The research underpinning this volume was informed, in part, by previous structured dialogues with officials and experts from the region, including Chinese government interlocutors. The Carnegie Endowment for International Peace sponsored and facilitated these professional exchanges.

III.     **Relevant Exculpatory Evidence Was Left Behind During the Search.**

During the FBI's search of the Tellis residence on October 11, 2025, an agent asked Ms. Tellis whether Dr. Tellis had ever received gifts from foreign nationals. Ms. Tellis responded affirmatively, explaining that Dr. Tellis frequently received small tokens of appreciation, such as gifts of tea. She offered to show the agents a recent example and retrieved a red gift bag. The red gift bag contained tea—a common, culturally appropriate gift in diplomatic and scholarly contexts. *See infra* at Section IV. An agent initially placed a yellow sticky note on the bag, consistent with the practice of marking items for potential seizure. However, the agents removed the sticky note and left the tea and gift bag at the residence. Photographs of the red gift bag and its contents are attached as Ex. C.

IV.     **His Prior Interactions with Foreign Persons and International Travel Were Both Lawful and Expected.**

As a scholar, think-tank fellow, and Special Government Employee with a focus on South Asian foreign policy, a requisite of Dr. Tellis' work was to meet regularly with foreign diplomats, military officials, and others in the international security sphere. For example, over the years, he

---

[1] Ashley J. Tellis, *Striking Asymmetries: Nuclear Transitions in Southern Asia* (2022), available at https://carnegieendowment.org/research/2022/07/striking-asymmetries-nuclear-transitions-in-southern-asia?lang=en.

5

has liaised with officials from Australia, China, France, Germany, India, Israel, Japan, Pakistan, Russia (pre-invasion of Ukraine), and the United Kingdom—including, at times, at the request of the Department of Defense and Presidential administrations.

As explained by leading U.S. foreign-policy scholar, Kori N. Schake, who has held directorships at numerous think-tank projects and has had a distinguished career in the U.S. government, "it is appropriate and indeed expected for foreign policy experts at think tanks to engage directly with foreign government officials—including those of states that are not U.S. allies—in order to perform their roles effectively." *See* Decl. of Kori N. Schake ¶ 5, attached as Ex. D. The exchange of small tokens at these meetings is "customary," and "it may be considered rude or disrespectful not to offer a small gift as a gesture of appreciation for a meeting or to decline the gift." *Id.* ¶¶ 10–11. These gifts certainly "do not, in themselves, indicate undue influence, bribery, or illicit conduct, particularly when low in monetary value." *Id.* ¶ 11. Dr. Tellis frequently gifts his own published monographs, reports, or books to his meeting guests. Dr. Tellis' job requires him to meet with foreign officials and the offer and acceptance of token gifts—like a bag of teas—is to be expected.

Last week, Dr. Tellis was scheduled to travel to Rome to serve as a lecturer at the NATO Defense College, an institution with which he has a longstanding professional relationship. As part of his regular academic engagements, he was invited to present at the College's "China Seminar" on October 15–16, 2025. *See* Invitation to Dr. Ashley Tellis by the NATO Defense College (Aug. 20, 2025), attached as Ex. E. The seminar focused on "The Geopolitical Implications of U.S.-China Competition," and, according to a representative of the College, Dr. Tellis was expected to be the star lecturer. He had planned to bring his family on the trip. Dr. Tellis frequently visits the

NATO Defense College in both his capacity as a lecturer and as a member of its Academic Board of Advisors. Such visits are a routine component of his academic and advisory work.

V. **Health Considerations.**

Dr. Tellis has recently experienced cardiac-related symptoms that necessitated two emergency room visits and medical investigations in the past several weeks. As a result, he has scheduled cardiology evaluations with specialists in the Washington, D.C. area in late October and again in mid-November. Continued access to his established medical providers is necessary to complete these assessments and determine what, if any, intervention is required.

VI. **Offer to Cooperate with the Government.**

Immediately after his initial appearance, Dr. Tellis offered to explain the underlying accusations to the government under a standard informal letter of immunity. The government lawyers have favorably responded, setting November 4 for an initial in-person meeting.

**ARGUMENT**

The Bail Reform Act requires the judicial officer to impose the "least restrictive" means of reasonably assuring the appearance of the person and safety of the community. 18 U.S.C. § 3142(c)(1)(B). Only in "rare circumstances should release be denied," and any "doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). "The default position of the law, therefore, is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The parties agree that release pending trial is appropriate in this instance. As detailed below, Dr. Tellis will appear as ordered by the Court and does not present a risk of flight nor does he pose any danger to the community, and there certainly are conditions of release that will reasonably assure his appearance and the safety of the community.

**I.      Dr. Tellis Will Appear as Ordered by the Court.**

Dr. Tellis is not a flight risk. He is a United States citizen with a close-knit local family and community. He has spent decades building a career and professional reputation, centered in the greater Washington, D.C. area, that he intends to defend. And he needs medical care from his own doctors and specialists that are local to the area. Any implication in the government's affidavit that Dr. Tellis is operating on behalf of a foreign adversary or intended to flee the country is entirely unfounded.

   A.      <u>The Nature and Seriousness of the Offense</u>.

Dr. Tellis is charged with retaining—but not disclosing or disseminating—national defense information. Pretrial detention in "retention" prosecutions under 18 U.S.C. § 793(e) is extremely uncommon, particularly where there is no evidence of dissemination, no obstruction, and the defendant has deep community and professional ties. Even in the prominent recent cases alleging retention of national defense information, defendants were released pending trial. In this district, in *United States v. Daniel Hale*, No. 1:19-cr-00059 (E.D. Va. May 17, 2019), ECF No. 19, the defendant, who was charged with retention and later transmission of national defense information, remained free pretrial prior to entering a plea. And in *United States v. Harold T. Martin III*, No. 1:16-mj-02254 (D. Md. Oct. 21, 2016), ECF No. 24, the only retention case identified by counsel that resulted in pretrial detention, the court's decision rested on concerns of obstruction and concealment—combined with his alcohol abuse, threats of suicide, and possession of several firearms (which he kept secret from his wife)—not mere possession or retention of national defense information.

These cases make clear that pretrial detention in Espionage Act retention prosecution is confined to truly exceptional situations—those involving aggravating conduct such as deception, concealment, or efforts to obstruct the investigation. There is no known case in which an academic,

policy expert, or similarly situated professional, with no allegation of transmission or concealment behavior, and with longstanding family and institutional ties, was detained pretrial solely on the basis of retention allegations.[2]

B. <u>Dr. Tellis has Strong Family and Community Ties.</u>

Dr. Tellis presents no risk of flight, first and foremost, because of his close-knit family—all local to the DMV area—whom he would never abandon.

C. <u>Dr. Tellis has an Esteemed Career in Public Policy that He Intends to Defend.</u>

Dr. Tellis is a leading scholar in international security and U.S. foreign policy with a focus on Asia and India. He has spent decades serving his country and contributing to policymaking at the highest levels of the U.S. government. He is proud of the career that he has built through public service. Dr. Tellis is committed to restoring his reputation as a distinguished scholar and advisor, beginning with his immediate and complete cooperation with the government investigators.

D. <u>Dr. Tellis is Currently Under the Care of U.S.-based Medical Specialists and He Relies on Continued Access to That Treatment.</u>

Dr. Tellis' medical conditions are not speculative—they are well-documented and ongoing. For privacy reasons, we will be happy to provide the Court and government *in camera* copies of the records from Dr. Tellis' recent ER visits, neurologist visit, and his upcoming cardiologist appointments. These conditions underscore the need for Dr. Tellis to remain under the care of his

---

[2] Past cases in this district with more serious charges, including the disclosure of national defense information, demonstrate that pretrial detention is not warranted here. *See, e.g.*, *United States v. Frese*, No. 1:19-cr-00304 (E.D. Va. Oct. 8, 2019) (releasing on bond, to the defendant's sister with GPS monitoring, a defendant charged with more than 10 instances of willful transmission of TOP SECRET national defense information); *United States v Kiriakou*, No. 1:12-cr-00127 (E.D. Va. Apr. 5, 2012) (releasing on bond, with the government's agreement, a former CIA operative who was charged with (1) disclosing the identity of a covert agent; (2) disclosing TOP SECRET/SCI national defense information; and (3) conducting "trick and scheme" to conceal a material fact from the CIA).

established medical providers. His ongoing health concerns and upcoming appointments with medical specialists further show that he is not a flight risk. Instead, Dr. Tellis needs to be at home with his family and with access to his physicians.

>	E.	There is No Basis to Conclude that Dr. Tellis is Operating on Behalf of a Foreign Government.

The suggestion in the government's affidavit that Dr. Tellis may have shared national defense information with the Chinese government is unsupported by any evidence and, in turn, so is any suggestion that a (false) connection to China might increase his risk of flight. The FBI affidavit in support of the criminal complaint selectively points to several instances where Dr. Tellis had dinner with Chinese officials at a restaurant in Fairfax, Virginia, and alludes to the exchange of a "red gift bag," implying that something nefarious occurred. Decl. of Jeffrey Scott ¶ 25, ECF No. 2. But the red gift bag contained tea—a common gift in Asian cultures. *Id.* ¶ 22 (emphasis added).

The affidavit also relies on a fleeting reference to a "manila envelope" that Dr. Tellis was observed carrying on one occasion. The government offers no evidence whatsoever as to the envelope's contents and concedes that he merely "did not appear to have [it]" at the end of the meeting—hardly a basis for suspicion. See Aff. ¶ 22. In fact, the most plausible explanation is entirely benign: during that period, Dr. Tellis was widely circulating hard copies of, and carrying on discussions about, his 2022 Carnegie Endowment publication, *Striking Asymmetries: Nuclear Transitions in Southern Asia*. He routinely brought printed copies to meetings and shared them with colleagues and counterparts. There is nothing improper—let alone incriminating—about distributing and conversing about one's own published work, and the affidavit's speculation to the contrary is unsupported and unreasonable.

Dr. Tellis' vocation entails frequent interactions with foreign officials, including diplomats from countries that are not U.S. allies. Leading foreign policy scholar Kori N. Schake explains that such engagements are both customary and necessary for scholars at think tanks to perform their roles effectively. *See* Decl. of Kori N. Schake ¶¶ 5, 10–11. Token gifts, such as the red gift bag of tea or a publication, are standard in diplomatic and academic practice and carry no implication of improper influence or unlawful activity. *Id.* ¶ 10.

The reference to the red gift bag as evidence of some illicit activity—particularly when the FBI recognized its innocuous nature during the search of Dr. Tellis' home and left it at the residence—is unexpected, and has fueled an unfortunate media narrative surrounding Dr. Tellis. At base, any suggestion that some connection to China creates a risk of flight is unsupportable.

## II. Dr. Tellis Does Not Present a Danger to the Community.

The Bail Reform Act authorizes detention based on danger only in a limited set of circumstances, none of which are present here.

Significantly, the Bail Reform Act considers only "*future* dangerousness." *United States v. Salerno*, 481 U.S. 739, 751 (1987) (emphasis added). "The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, . . . a court may disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751). "Thus, a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, *prospective* threat to public safety" that cannot be addressed through conditions of release. *Id.* (emphasis added). Here, the government has failed to identify any "concrete, prospective threat" to public safety posed by releasing Dr. Tellis.

Dr. Tellis poses no danger to the community. The sole charge against him involves the unlawful *retention* of national defense information—not its dissemination. There is no allegation, let alone evidence, that Dr. Tellis ever shared, attempted to share, or intended to share national defense information with unauthorized individuals.

To justify detention, courts in national security cases have looked for evidence of efforts to transmit information, continued access to classified systems, or a continuing ability to exploit retained materials. None of these circumstances are present here. Dr. Tellis is cooperating with the government. In short, there is not even a hypothetical threat to national security. Regardless, pretrial detention cannot be based on theoretical harm alone; it must be grounded in demonstrable, prospective danger.

## CONCLUSION

For the reasons set forth above, pretrial release under the agreed conditions is appropriate and necessary.

Accordingly, we ask that this Court release Dr. Tellis in accordance with the conditions stipulated to by the parties.

Dated: October 20, 2025.                      Respectfully submitted,

_____
John Nassikas (No. 24077)

_____
Deborah Curtis (*Pro Hac Vice*)
Arnold & Porter LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-6820
Telephone: (202) 942-5081
john.nassikas@arnoldporter.com
deborah.curtis@arnoldporter.com

*Attorneys for Ashley J. Tellis.*

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day filed the foregoing document electronically with the United States District Court for the Eastern District of Viginia with electronic service to all counsel and parties of record.

Dated: October 20, 2025.

_____
John Nassikas

14